IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. 6:16-cv-1220 |
| | § | |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| CONTIXO INC., | § | |
| PROEXPRESS DISTRIBUTOR | § | |
| LLC, | § | |
| MTM TRADING LLC, | § | |
| TCL COMMUNICATION | § | |
| TECHNOLOGY HOLDINGS | § | |
| LIMITED, TCT MOBILE | § | |
| LIMITED, TCT MOBILE (US), | § | |
| INC. & | § | |
| VISUAL LAND INC. | § | |
| | | |
| *Defendants*. | | |

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Blue Spike, LLC files this complaint against Defendants Contixo Inc. ("Contixo"), Proexpress Distributor LLC ("Proexpress"), MTM Trading LLC ("MTM"), TCL Communication Technology Holdings Limited, TCT Mobile Limited, and TCT Mobile (US), Inc. (collectively "TCL"), and Visual Land Inc. ("Visual Land") alleging infringement of U.S. Patent No. 5,745,569, entitled "Method for Stega-Cipher Protection of Computer Code" (the "'569 Patent") and U.S. Patent No. 8,930,719, entitled "Data Protection Method and Device" (the "'719 Patent," and collectively with the '569 Patent, the "Patents-in-Suit") as follows:

## NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## PARTIES

2.      Plaintiff Blue Spike, LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC is the assignee of the Patents-in-Suit, and has ownership of all substantial rights in the Patents-in-Suit, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

3.      On information and belief, Defendant Contixo Inc. is a company organized and existing under the laws of California, with a principal place of business at 1910 Archibald Avenue, Suite A, Ontario, CA 91761.  Contixo may be served through its registered agent, Jeff Sui, at 1910 Archibald Avenue, Suite A, Ontario, CA 91761.

4.      On information and belief, Defendant Proexpress Distributor LLC is a company organized and existing under the laws of Washington, with a principal place of business at 7668 Standish Place, Derwood, Maryland 20855. Proexpress Distributor LLC does business under the name TabletExpress (*see* Exhibit D7), and is the registered owner of the United States trademark "TabletExpress."  Proexpress may be served through its registered agent, Lei Guo, at 11011 Greenwood Avenue N., Apt. 5, Seattle, WA 98133.

5.      On information and belief, Defendant MTM Trading LLC is organized and existing under the laws of Delaware, with an address at 1144 Hilford Court, San Jose, CA

95132-2808.   MTM can be served via its registered agent for service, PHS Corporate Services, Inc., 1313 N. Market St, Suite 5100, Wilmington, DE 19801.

6.      On information and belief, Defendant MTM imports, sells, and/or offers for sale in the United States, Texas, and this judicial district, tablets under the brand "Tagital." On information and belief, Defendant is also the registered owner of the United States trademark "Tagital" (*see* Exhibit E3).

7.      On information and belief, TCL Communication Technology Holdings Limited ("TCL Communication") is a company organized and existing under the laws of China, with a principal place of business at 15/F, TCL Tower, Gaoxin Nan Yi Road, Nanshan District, Shenzhen, Guangdong, P.R.C. TCL Communication is a subsidiary of TCL Corporation, which is also based in Shenzhen, P.R.C.

8.      On information and belief, Defendant TCT Mobile Limited ("TCT Hong Kong") is a wholly-owned subsidiary of TCL Communication. TCT Hong Kong is a company established under the laws of Hong Kong, having its registered office at Room 1520, Tower 6, China Hong Kong City, 33 Canton Road, Tsim Sha Tsui, Kowloon, Hong Kong. On information and belief, TCT Hong Kong has a domestic address at 25 Edelman, Suite 200, Irvine, CA 92618.

9.      On information and belief, Defendant TCT Mobile (US), Inc. ("TCT US") is a subsidiary of TCL Communication and is organized and existing under the laws of Delaware, with a principal place of business at 25 Edelman, Irvine, California 92618. TCT US can be served via its registered agent for service, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

10.     On information and belief, TCL Communication, together with its subsidiaries and its affiliates, including, but not limited, to TCT Hong Kong and TCT US, designs, manufactures, uses, markets, imports into the United States, sells, and/or offers for sale in the United States, Texas, and this judicial district, smartphones and tablets under the brands "Alcatel" and "TCL."

11.     On information and belief, Visual Land Inc. is a company organized and existing under the laws of California, with a principal place of business at 17785 Center Court Dr., Suite 670, Cerritos, CA 90703. Visual Land may be served through its registered agent, Gary Lu, at that address.

### JURISDICTION AND VENUE

12.     This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

### A.      Defendant Contixo

13.     The Court has personal jurisdiction over Defendant Contixo for at least four reasons: (1) Contixo has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Contixo regularly does business or solicits business in this District and in Texas; (3) Contixo engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in this District and in Texas; and (4) Contixo has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

14.     Specifically, Contixo has partnered with numerous resellers and distributors to sell and offer for sale infringing products to consumers in this District and in Texas, both online and in stores (*see*, *e.g.*, Exhibits C1, C2 & C3); Contixo operates a website that solicits sales of infringing products by consumers in this District and Texas (*see* Exhibit C4); and Contixo offers telephonic and e-mail support services to customers in this District and Texas (*see* Exhibit C5). Given these extensive contacts, the Court's exercise of jurisdiction over Contixo will not offend traditional notions of fair play and substantial justice.

15.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Contixo does business in the State of Texas, Contixo has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's claims happened in the District, and Contixo is subject to personal jurisdiction in the District.

**B.     Defendant Proexpress**

16.     The Court has personal jurisdiction over Defendant Proexpress for at least four reasons: (1) Proexpress has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Proexpress regularly does business or solicits business in this District and in Texas; (3) Proexpress engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in this District and in Texas; and (4) Proexpress has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

17.     Specifically, Proexpress has partnered with numerous resellers and distributors to sell and offer for sale infringing products to consumers in this District and in Texas, both online and in stores (*see*, *e.g.*, Exhibits D1 & D2); Proexpress operates a website that solicits sales of infringing products to consumers in this District and Texas (*see* Exhibit D3); Proexpress offers telephonic and e-mail support services to customers in this District and Texas (*see* Exhibit D4); and Defendant offers software for download by customers in this District and Texas (*see* Exhibit D5).  Given these extensive contacts, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

18.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Proexpress does business in the State of Texas, Proexpress has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's claims happened in the District, and Proexpress is subject to personal jurisdiction in the District.

**C.     Defendant MTM**

19.     The Court has personal jurisdiction over Defendant MTM for at least four reasons: (1) MTM has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) MTM regularly does business or solicits business in this District and in Texas; (3) MTM engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in this District and in Texas; and (4) MTM has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

20.     Specifically, MTM has partnered with resellers and distributors to sell and offer for sale infringing products to consumers in this District and in Texas (*see*, *e.g.*, Exhibits E1 & E2).  Given these contacts, the Court's exercise of jurisdiction over MTM will not offend traditional notions of fair play and substantial justice.

21.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because MTM does business in the State of Texas, MTM has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's claims happened in the District, and MTM is subject to personal jurisdiction in the District.

**D.      Defendant TCL**

22.     The Court has personal jurisdiction over Defendant TCL for at least four reasons: (1) TCL has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) TCL regularly does business or solicits business in this District and in Texas; (3) TCL engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in this District and in Texas; and (4) TCL has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

23.     Specifically, TCL has partnered with numerous resellers and distributors to sell and offer for sale infringing products to consumers in this District and in Texas, both online and in stores (*see*, *e.g.*, Exhibits F1 & F2); TCL operates a website that solicits sales of infringing products to consumers in this District and Texas (*see* Exhibits F3 & F4); TCL offers telephonic and e-mail support services to customers in this District and

Texas (*see* Exhibit F5); and TCL offers software for download by customers in this District and Texas (*see* Exhibit F6). Given these extensive contacts, the Court's exercise of jurisdiction over TCL will not offend traditional notions of fair play and substantial justice.

24.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because TCL does business in the State of Texas, TCL has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's claims happened in the District, and TCL is subject to personal jurisdiction in the District.

**E.     Defendant Visual Land**

25.     The Court has personal jurisdiction over Defendant Visual Land for at least four reasons: (1) Visual Land has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Visual Land regularly does business or solicits business in this District and in Texas; (3) Visual Land engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in this District and in Texas; and (4) Visual Land has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

26.     Specifically, Visual Land has partnered with numerous resellers and distributors to sell and offer for sale infringing products to consumers in this District and in Texas, both online and in stores (*see*, *e.g.*, Exhibits G1 & G2); Visual Land operates a website that solicits sales of infringing products to consumers in this District and Texas (*see* Exhibit

G3); and Visual Land offers telephonic and e-mail support services to customers in this District and Texas (*see* Exhibit G4). Given these extensive contacts, the Court's exercise of jurisdiction over Visual Land will not offend traditional notions of fair play and substantial justice.

27.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Visual Land does business in the State of Texas, Visual Land has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's claims happened in the District, and Visual Land is subject to personal jurisdiction in the District.

## FACTUAL BACKGROUND

### A.     Moskowitz's History

28.     Protection of intellectual property is a prime concern for creators and publishers of digitized copies of copyrightable works, such as musical recordings, movies, video games, and computer software. Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such protection possible.

29.     Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

30.     Moskowitz is an inventor of more than 100 patents, including forensic watermarking, signal abstracts, data security, software watermarks, product license keys,

9

deep packet inspection, license code for authorized software and bandwidth securitization.

31.     The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA made the application classified under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

32.     As an industry trailblazer, Moskowitz has been a public figure and an active author on technologies related to protecting and identifying software and multimedia content. A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's company as one of two leading software start-ups in this newly created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

33.     Moskowitz has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates. Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights*

*Management*, a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

34.     Moskowitz and Blue Spike continue to invent technologies that protect intellectual property from unintended use or unauthorized copying.

**B.     The Accused Technology**

35.     Address Space Layout Randomization ("ASLR") is a security technique that protects software by shuffling it in computer memory. Prior to implementing ASLR, modern-day operating systems often loaded software into predictable memory locations. That predictability allowed attackers to pinpoint specific potions of software and manipulate them in unintended ways. In response to this grave threat, many operating systems now utilize ASLR to reduce predictability by shuffling software to random memory locations.

36.     The Android Operating System ("Android" or "Android OS") utilizes ASLR technology to protect itself and other software from abuse. Android began implementing ASLR technology as early as version 2, and advertised more robust implementations by versions 4 and 4.1.

**C.     The Accused Products**

37.     Defendant Contixo designs, develops, employs, and/or manufactures ASLR software, systems, and/or technology. Contixo makes, uses, offers for sale and/or imports

into the U.S. products, systems, and/or services including, but not limited to, it's A-, LA-, LC-, LR-, M-, Q- series of devices (collectively, the "Contixo Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Contixo Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

38.     Contixo has not sought or obtained a license for any of Blue Spike's patented technologies.

39.     Yet the Contixo Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

40.     Defendant Proexpress designs, develops, employs, and/or manufactures ASLR software, systems, and/or technology. Proexpress makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its Dragon Touch and KingPad brands of devices (collectively, the "Proexpress Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

41.     Proexpress has not sought or obtained a license for any of Blue Spike's patented technologies.

42.     Yet the Proexpress Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

43.     Defendant MTM designs, develops, employs, and/or manufactures ASLR software, systems, and/or technology. Defendant makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its

T7, T9, and T10 series of devices (collectively, the "MTM Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the MTM Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

44.     MTM has not sought or obtained a license for any of Blue Spike's patented technologies.

45.     Yet the MTM Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

46.     Defendant TCL designs, develops, employs, and/or manufactures ASLR software, systems, and/or technology. TCL makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its Alcatel OneTouch, Idol, Go Play, Fierce, Evolve, Elevate, Astro, Conquest, Sonic, Pixi, Pop, AT&T Trek, and TCL series and brands of devices (collectively, the "TCL Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the TCL Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

47.     TCL has not sought or obtained a license for any of Blue Spike's patented technologies.

48.     Yet the TCL Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

49.     Defendant Visual Land designs, develops, employs, and/or manufactures ASLR software, systems, and/or technology. Visual Land makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its

A-, LA-, LC-, LR-, M-, Q- series of devices (collectively, the "Visual Land Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Visual Land Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

50.    Visual Land has not sought or obtained a license for any of Blue Spike's patented technologies.

51.    Yet the Visual Land Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

52.    Collectively, the Contixo Accused Products, the Proexpress Accused Products, the MTM Accused Products, the TCL Accused Products, and the Visual Land Accused Products are the "Accused Products."

**COUNT 1:**
**INFRINGEMENT OF U.S. PATENT NO. 5,745,569**

53.    Blue Spike incorporates by reference the allegations in paragraphs 1 through 52 above in this Complaint.

54.    The '569 Patent is valid, is enforceable, and was duly and legally issued on April 28, 1998.  A true and correct copy of the '569 Patent is attached to this Complaint as Exhibit A.

55.    Without a license or permission from Blue Spike, Defendants have infringed and continues to infringe on one or more claims of the '569 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

56.     Defendants have been and now are directly infringing by, among other things, practicing all of the steps of the '569 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '569 Patent.  Specifically, Defendants manufacture and/or import the Accused Products into the United States (*see*, *e.g.*, Exhibits D7 & G5); have partnered with numerous resellers to offer for sale and sell the Accused Products in the United States, in numerous stores and websites (*see*, *e.g.*, Exhibits C1, C2, C3, D1, D2, E1, E2, F1, F2, G1 & G2); operate their own websites that offer for sale and sell the Accused Products to consumers in Texas and this District (*see*, *e.g.*, Exhibits C4, D3, F4 & G3), generate revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see id.*); and have attended trade shows in the United States where they have demonstrated the Accused Products (*see*, *e.g.*, Exhibit D6, F7 & G6).

57.     Defendants have been and now are indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '569 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '569 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '569 Patent. By making, using, importing offering for sale, and/or selling such products, Defendants injured Blue Spike and are thus liable to Blue Spike for infringement of the '569 Patent under 35 U.S.C. § 271. Those whom Defendants induce to infringe and/or to whose infringement Defendants contribute are

the end users of the Accused Products. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004). Defendants had knowledge of the '569 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '569 Patent by actively inducing infringement and/or is liable as contributory infringers of one or more claims of the '569 Patent under 35 U.S.C. § 271.

58.     Defendants' acts of infringement of the '569 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendants the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendants' infringement of Blue Spike's exclusive rights under the '569 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

59.     On information and belief, the infringement of the '569 Patent by Defendants have been willful and continues to be willful. Defendants knew or should have known that its incorporation of the accused technology in their Accused Products represented an objectively high likelihood of infringing the '569 Patent. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). Defendants had knowledge of the '569 Patent, including but not limited to at least one or more of the following:

a.     The '569 patent has been forward-cited as prior art in connection with the examination of at least 300 subsequently-issued U.S. patents, including Microsoft in its patent titled "License-based cryptographic technique, particularly suited for use in a digital rights management system, for controlling access and use of bore resistant software objects in a client computer," Digimarc in its patent titled "Anti-piracy system

for wireless telephony," AT&T in multiple patents including one of its U.S. Patent titled "Protected IP telephony calls using encryption," NEC in its U.S. Patent titled "Method and system for protecting digital data from unauthorized copying," Matsushita Electric Industrial in its U.S. Patent titled "Active data hiding for secure electronic media distribution," and multiple other well-known companies and government agencies, including The U.S. Army, Intertrust Technologies, Texas Instruments, Dell Products, Intel, ShieldIP, Borland Software Company, Avaya Inc., Shoretel Inc., and Syndata Technologies.

       b.     The filing and service of this Complaint.

60.     On information and belief, Defendants have at least had constructive notice of the '569 Patent by operation of law.

## COUNT 2:
## INFRINGEMENT OF U.S. PATENT NO. 8,930,719

61.     Blue Spike incorporates by reference the allegations in paragraphs 1 through 60 above in this Complaint.

62.     The '719 Patent is valid, is enforceable, and was duly and legally issued on January 6, 2015.  A true and correct copy of the '719 Patent is attached to this Complaint as Exhibit B.

63.     Without a license or permission from Blue Spike, Defendants have infringed and continue to infringe on one or more claims of the '719 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

64.     Defendants have been and now are directly infringing by, among other things, practicing all of the steps of the '719 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '719 Patent.  Specifically, Defendants manufacture and/or import the Accused Products into the United States (*see*, *e.g.*, Exhibits D7 & G5); have partnered with numerous resellers to offer for sale and sell the Accused Products in the United States, in numerous stores and websites (*see*, *e.g.*, Exhibits C1, C2, C3, D1, D2, E1, E2, F1, F2, G1 & G2); operate their own websites that offer for sale and sell the Accused Products to consumers in Texas and this District (*see*, *e.g.*, Exhibits C4, D3, F4 & G3), generate revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see id.*); and have attended trade shows in the United States where they have demonstrated the Accused Products (*see*, *e.g.*, Exhibit D6, F7 & G6).

65.     Defendants have been and now are indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '719 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '719 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '719 Patent. By making, using, importing offering for sale, and/or selling such products, Defendants injured Blue Spike and are thus liable to Blue Spike for infringement of the '719 Patent under 35 U.S.C. § 271. Those whom Defendants induce to infringe and/or to whose infringement Defendants contribute are

the end users of the Accused Products. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004). Defendants had knowledge of the '719 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '719 Patent by actively inducing infringement and/or is liable as contributory infringers of one or more claims of the '719 Patent under 35 U.S.C. § 271.

66.     Defendants' acts of infringement of the '719 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendants the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendants' infringement of Blue Spike's exclusive rights under the '719 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

67.     On information and belief, the infringement of the '719 Patent by Defendants have been willful and continues to be willful. Defendants knew or should have known that its incorporation of the accused technology in their Accused Products represented an objectively high likelihood of infringing the '719 Patent. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). Defendants had knowledge of the '719 Patent, including but not limited to at least one or more of the following:

a.   The filing of Plaintiff's prior lawsuits asserting the '719 Patent against five major smartphone manufacturers—Xiaomi, Huawei, Infosonics, DDM Brands, and ZTE (consolidated as *Blue Spike, LLC v. Beijing Xiaomi Technology Co. Ltd. et al.* (E.D. Tex.) Case No. 2:15-CV-01785)—which has been widely publicized and reported upon—*see*, *e.g.*, "China's Xiaomi slapped with patent-infringement suit by Blue Spike in

US over upcoming Mi 5, Mi 5 Plus smartphones" *South China Morning Post* (Dec. 9, 2015), available at http://www.scmp.com/tech/enterprises/article/1889024/chinas-xiaomi-slapped-patent-infringement-suit-blue-spike-us-over and attached as Exhibit H.

   b. The filing and service of this Complaint.

68. On information and belief, Defendants have at least had constructive notice of the '719 Patent by operation of law.

## REQUEST FOR RELIEF

   Blue Spike incorporates each of the allegations in paragraphs 1 through 68 above and respectfully asks the Court to:

(a) enter a judgment that Defendants have directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-in-Suit;

(b) enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendants' infringement of, direct or contributory, or inducement to infringe, the Patents-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c) enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendants' willful infringement of one or more of the Patents-in-Suit;

(d) issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendants, their directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(e)     enter a judgment requiring Defendants to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f)     award Blue Spike all other relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Blue Spike demands a jury trial on all issues that may be determined by a jury.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
**GARTEISER HONEA, P.C.**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (888) 908-4400

Kirk J. Anderson
  California Bar No. 289043
  kanderson@ghiplaw.com
Ian Ramage
  California Bar No. 224881
  iramage@ghiplaw.com
**GARTEISER HONEA, P.C.**
44 North San Pedro Road
San Rafael, California 94903
Telephone: (415) 785-3762
Facsimile: (415) 785-3805

*Counsel for Blue Spike, LLC*